IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MCKNIGHT V. MCKNIGHT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHRISTOPHER MCKNIGHT, APPELLANT,

V.

CHAELI MCKNIGHT, APPELLEE.

Filed February 25, 2025.    No. A-24-267.

Appeal from the District Court for Adams County: MORGAN R. FARQUHAR, Judge. Affirmed.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Erin M. Urbom, of Bradley Law Office, P.C., for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

INTRODUCTION

The marriage of Christopher McKnight and Chaeli McKnight was dissolved in April 2018. The physical custody of their two children has evolved over time from sole to split to joint physical custody. In the latest modification order, as amended, the Adams County District Court determined that neither party should pay monthly child support but that they would be equally responsible for all reasonable and necessary direct expenditures made solely for their children. On appeal, Christopher takes issue with the district court not ordering Chaeli to pay child support. Finding no abuse of discretion, we affirm.

- 1 -

BACKGROUND

Christopher and Chaeli's marriage dissolution decree awarded Christopher legal and physical custody of the parties two children, a son born in 2006 and a daughter born in 2010. Chaeli was ordered to pay child support.

In June 2022, the parties filed a joint stipulation and parenting plan, and the district court entered an order approving the same. The modification order awarded Christopher and Chaeli joint legal custody of their children. Christopher was awarded physical custody of the parties' daughter, while Chaeli was awarded physical custody of their son. Neither party was ordered to pay child support "because each . . . [had] custody of one of their minor children." Both parties were ordered to pay for the child in their physical custody "the first $250.00 of nonreimbursed reasonable and necessary medical expenses each year"; the other parent was ordered to pay 50 percent of any such nonreimbursed expenses incurred beyond that amount. Christopher was permitted to claim their daughter as a dependency exemption for tax purposes, and Chaeli was permitted to claim their son. The parties subsequently filed an amended joint stipulation, and a corresponding amended order was entered in January 2023, which addressed health insurance for the children; all other provisions remained the same. The new paragraph indicated that the parties' children had health insurance through Medicaid since neither parent had "health insurance available to them at a reasonable cost through their employer."

Just a couple months following the June 2022 stipulated agreement splitting physical custody between the parties as described above, the parties agreed their son should reside with Christopher rather than Chaeli due to legal trouble their son was getting into while residing with Chaeli. The parties' son resided with Christopher from August 2022 to February 2023. Chaeli voluntarily paid Christopher $200 a month to help support their son. However, at some point, she stopped making the payments because she could not afford it. In February 2023, Chaeli showed up at Christopher's residence to bring their son back to live with her.

On March 6, 2023, Christopher filed a complaint to modify, as well as an ex parte motion requesting that the district court grant him the temporary care, custody, and control of the parties' son. The court granted the ex parte motion that same day and set the matter for a temporary hearing. On April 13, the court entered an order finding that the "temporary custody of [the parties' son] shall remain with [Christopher] subject to [certain] visitation."

Trial took place over 3 days in October and December 2023. At the time of trial, Christopher resided in Hastings, Nebraska, with his fiance and her two children. Chaeli resided in York, Nebraska, although she had been residing in Hastings when the complaint to modify was filed. Because only child support is challenged on appeal, we need not detail the evidence adduced related to custody.

On January 10, 2024, the district court issued an order finding that a material change in circumstances had occurred "in that the living and working location of [Chaeli] has changed, the minor children require different supervision and care, and for a multitude of reasons, the family dynamic has been significantly altered." The court awarded the parties the "joint physical care, custody, and control of the minor children; that [Christopher] shall be the primary custodial parent of both children and that both children shall reside with [Christopher], EXCEPT as described herein during the summer and for regular and holiday visitation." The court further ordered that

- 2 -

Chaeli "shall have primary physical custody of [the son] during each summer, beginning the first Monday after school is released for summer break and ending the first Friday before school resumes in the Fall."

The district court further ordered that "neither party shall pay child support to the other, and NO CASH MEDICAL IS ORDERED. The Court makes no modification to medical support or dependency exemptions as described in the original decree."

On January 16, 2024, Christopher filed a motion to alter or amend the district court's January 10 order. He asked the court to include an order for child support and to allow him "to claim the minor children on his taxes." A couple days later, Chaeli filed a motion to alter or amend pertaining to a provision not relevant to this appeal. A hearing on both motions took place on March 11. At that hearing, Christopher's attorney pointed out that although Christopher "has the primary physical custody of both children," the court "ordered that there is no modification to the dependency exemptions and no child support is ordered to be paid." Notably, Christopher's attorney then asked the court "to alter or amend that original . . . January 10, 2024, Order to either order some level of child support or, at a minimum, allow [Christopher] to claim both exemptions." He argued that it was "unfair and unequitable" to not require Chaeli to pay child support but let her claim "the dependency exemption for [their son]."

In response, Chaeli's attorney simply noted that Chaeli had already claimed the parties' son on her 2023 taxes, but that she "would be willing to give up" that exemption in 2024 and "moving forward." Chaeli's attorney also argued that Chaeli was doing all the driving so if the district court did impose a child support order, that it should "do a deviation" because Chaeli was "doing all the driving to and from Hastings to York" since Christopher did not have a driver's license due to a medical condition. Chaeli's counsel summarized, stating that they were asking the court "to either deviate from the child support calculation or allow [Christopher] to claim both children on his 2024 taxes." At that point, Christopher's counsel stated, "The other thing is the January 10, 2024, Order also did not order the parties to divide the necessary and reasonable expenses" for the children, "which is typically the case . . . under the child support guidelines if there is no support ordered or a joint custody calculation order."

Ultimately, the district court verbally granted Christopher the authority to claim both children as dependency exemptions on his taxes "for the 2024 tax year and all future years, unless modified by the Court." Regarding child support, the court maintained its decision not to order child support. It reasoned, "There's a lot of complicated issues involved with both clients and the children, where people live, what they do. There's a lot of unique circumstances, and I don't believe that it[] -- would be proper to order any child support at this time just based on the circumstances." Attorneys for the parties and the court then discussed the payment of reasonable and necessary expenses, which Christopher's counsel generally argued was required by the child support guidelines. The following colloquy occurred:

> THE COURT: [Were] nonmedical expenses ordered in the prior order?
>
> [Counsel for Christopher]: No. And the reason . . . that I raise that is that the Court's ordering no child support. . . . I assume it probably wouldn't have been raised as an issue because at the time one parent had one child, the other parent had the other child, and, thus they were probably each covering the separate expenses for that child. However, in this case now since one parent has both of the children for the majority of the time and the

Court's not ordering child support, I believe that the Court should order division of necessary and reasonable expenses as it would do in a joint custody case where there's no child support ordered.

. . . .

[Counsel for Chaeli]: Your Honor, my client's in agreement with paying half of medical expenses and reasonable expenses for the minor children. She has been paying that. She's in agreement with paying that. She wants to continue to support [their son] in what he needs.

. . . .

[THE COURT]: So the Court -- it appears there is an agreement. It seems reasonable; so the Court is going to order that all reasonable and necessary expenses under the child support guideline, including all medical expenses for both minor children, should be divided equally between the two parties.

The district court entered a written order on March 19, 2024, sustaining in part Christopher's motion to alter or amend, and denying Chaeli's motion. The order provided, "Moving forward, the parties shall be equally responsible for all reasonable and necessary direct expenditures made solely for the children as defined in the Nebraska Child Support Guidelines. The parties shall exchange email addresses to allow communication regarding such expenditures to occur." It further stated that all other terms of the January 10, 2024, order "shall remain in full force and effect." There was no mention of the court's verbal decision regarding Christopher having the authority to claim both children as dependency exemptions from tax year 2024 forward; however, neither party raises that omission on appeal.

Christopher appeals.

## ASSIGNMENT OF ERROR

Christopher assigns that the district court erred in not ordering Chaeli to pay child support.

## STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record and will be affirmed absent an abuse of discretion. *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024). But when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

Christopher assigns that the district court erred in not ordering Chaeli to pay child support. He argues that the court should have ordered Chaeli to pay child support because "both children are living with [him] the majority of the time" and "[s]ufficient evidence was adduced to determine child support." Brief for appellant at 14. He further claims that the court did not provide a reason for why it deviated from the child support guidelines.

Chaeli contends the district court did not abuse its discretion in declining to order child support because it "granted the exact relief prayed for by [Christopher]," who "did not request a modification of the support" in his complaint to modify. Brief for appellee at 13. Although we agree with Chaeli's assertion that Christopher was granted the relief he requested, our decision is not based on Christopher's failure to specifically request child support in his modification complaint. See, *Johnson v. Johnson*, 15 Neb. App. 292, 726 N.W.2d 194 (2006) (child support is inherent in child custody modification); *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005) (prayer for general equitable relief is to be construed liberally, and will often justify granting relief in addition to that contained in specific prayer, provided it fairly conforms to case made by petition and evidence).

Our determination that Christopher was granted the relief he requested is based upon the discussion that took place at the hearing on his motion to alter or amend. At that time, he was specifically challenging the district court's decision not to award child support in its January 10, 2024, order. However, Christopher asked the court to award him "either" child support "or" both of the dependency exemptions. Because he was awarded the dependency exemptions he requested as an alternative to child support, he cannot now claim that the court abused its discretion by not also ordering child support. A party cannot complain of error which the party has invited the court to commit. *Mahlendorf v. Mahlendorf*, 308 Neb. 202, 925 N.W.2d 923 (2021).

As set forth earlier, at the hearing on Christopher's motion to alter or amend, Christopher's attorney pointed out that although Christopher "has the primary physical custody of both children," the district court "ordered that there is no modification to the dependency exemptions and no child support is ordered to be paid." He therefore asked the court "to alter or amend that original . . . January 10, 2024, Order to *either* order some level of child support *or*, at a minimum, allow [Christopher] to claim both exemptions." (Emphasis supplied.) He argued that it was "unfair and unequitable" to not require Chaeli to pay child support but let her claim "the dependency exemption for [their son]." Chaeli did not object to Christopher having both dependency exemptions starting with the 2024 tax year since she had already claimed their son on her 2023 tax returns. The court granted Christopher's request and awarded him the authority to claim both children as dependency exemptions on his taxes "for the 2024 tax year and all future years." (But as noted earlier, this determination was not included in the March 19, 2024, order amending the January 10 order; to the extent there is a separate order addressing the dependency exemptions, it is not contained in our record.)

Also, in addition to asking the district court to "either" order "some level of child support" "or" allow him to claim both dependency exemptions, Christopher asked the court to order the "division of necessary and reasonable expenses as it would do in a joint custody case where there's no child support ordered." Chaeli's counsel agreed that Chaeli would pay "half of medical expenses and reasonable expenses for the minor children." The court responded, "So . . . it appears there is an agreement." The resulting March 19, 2024, order directed the parties to be "equally responsible for all reasonable and necessary direct expenditures made solely for the children as defined in the Nebraska Child Support Guidelines." Again, this is what Christopher requested and what the court understood to be an agreement by both parties.

Further, in addition to Christopher being awarded what he requested, we also observe that the district court explained why it was not ordering any child support. It stated, "There's a lot of

complicated issues involved with both clients and the children, where people live, what they do. There's a lot of unique circumstances, and I don't believe that it[] -- would be proper to order any child support at this time just based on the circumstances." Notably, there is nothing in the record to suggest that neither party paying child support would adversely impact the best interests of the children. See *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018) (deviations from child support guidelines must take into consideration best interests of children). The record shows that Christopher earned $16.50 per hour and Chaeli earned $21.81 per hour. Christopher was living in a home with four bedrooms, which allowed the parties' son to have his own bedroom. Chaeli was living in a two-bedroom apartment. The parties were awarded the "joint physical care, custody, and control of the minor children," but with Chaeli having "primary physical custody" of the parties' son during the summer. Although the amount of primary physical custody is not equally divided between the parties, the court's reference to "where people live" and "unique circumstances" indicates that the court at least in part considered Chaeli's time and expenses incurred by being the sole transporter of the children given Christopher's inability to drive. Additionally, the court ordered the parties to be equally responsible for the children's reasonable and necessary direct expenditures. See Neb. Ct. R. § 4-212 (rev. 2011) (when specific provision for joint physical custody is ordered, "all reasonable and necessary direct expenditures made solely for the child(ren) such as clothing and extracurricular activities shall be allocated between the parents"). There is nothing to suggest that the court failed to consider the children's best interests when declining to order child support.

"[T]he guidelines offer flexibility and guidance, with the understanding that not every child support scenario will fit neatly into the calculation structure." *Czaplewski v. Czaplewski*, 240 Neb. 629, 631, 483 N.W.2d 751, 752 (1992). "Under the guidelines, a deviation is permissible whenever application of the guidelines in an individual case would be unjust or inappropriate." *Keiser v. Keiser*, 310 Neb. 345, 352, 965 N.W.2d 786, 791 (2021). Given the circumstances of this case, we cannot say that the district court abused its discretion in declining to order child support.

CONCLUSION

Finding no abuse of discretion in the district court's decision not to order child support, we affirm its January 10, 2024, modification order, as amended on March 19.

AFFIRMED.